IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-90-FL

SONDRA HANCOCK,
    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,
    Defendant.

**MEMORANDUM AND RECOMMENDATION**

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE #23, DE #25] pursuant to Rule 12 of the Federal Rules of Civil Procedure. Plaintiff Sondra Hancock ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have filed memoranda in support of their respective motions, and the time for filing responsive briefs has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on May 11, 2010, alleging disability beginning September 30, 2003. (R. 204-16.) Her claim was denied initially and upon reconsideration. (R. 82-85.) A hearing before Administrative Law Judge

William Andersen ("ALJ") was held on October 7, 2011, at which Claimant was represented by counsel. (R. 28.) An impartial vocational expert ("VE") appeared and testified. (R. 48-55.) On November 28, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 13-21.) Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 8), and submitted additional evidence as part of her request (R. 5). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on February 8, 2013. (R. 1-5.) Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 301 *et seq.*, ("Act") is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2012). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance," *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the

2

relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## **DISABILITY EVALUATION PROCESS**

"Disability" is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated pursuant to the Act provide a five-step, sequential evaluation process that the ALJ must follow in evaluating a disability claim:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the [applicable] duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we

will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2013); *see also Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges that the ALJ erred by not considering the effects of Claimant's mental retardation at any step of the Sequential Evaluation Process. (Pl.'s Mem. Supp. Mot. J. Pleadings [DE #24] at 1.)

## FACTUAL HISTORY

**I.     ALJ's Findings**

Applying the sequential, evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15.) Next, the ALJ determined Claimant had the following severe impairments: diabetes mellitus, arthritis, neuropathy, asthma, and a mood disorder associated with

4

anger management.  (*Id.*)   However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 15-16.)  Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in her activities of daily living and concentration, persistence, and pace and marked limitations in social functioning with no episodes of decompensation.  (R. 16.)

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work subject to the following limitations: (1) sit/stand option;[1] (2) "avoid exposure to chemicals and pulmonary irritants;" (3) "simple instruments and simple routine repetitive tasks [sic] in two-hour increments;" (4) "may have some problems relating to supervisors and co-workers;" (5) "occasionally lift and carry twenty-five pounds and frequently lift and carry ten pounds;" and (6) "stand[ing] and walk[ing] six hours and sit[ting] six hours out of an eight-hour workday."  (R. 16.)  In making this assessment, the ALJ found Claimant's statements about her limitations not credible to the extent they were inconsistent with the RFC.  (R. 17.)

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a nurse's assistant or fast food cook.  (R. 20.) Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies.  (R. 20-21.)

---

[1] As the ALJ did not indicate how often Claimant would need to alternate sitting and standing or for how long she could sit or stand without alternating, the court construes the ALJ's "alternate sit/stand option" as requiring that Claimant be permitted to alternate sitting and standing at will.

5

## II. Claimant's Testimony

At the time of Claimant's administrative hearing, Claimant was 47 years old, had completed the eighth grade, and was unemployed. (R. 31-32.) Claimant was last employed at Parker's Barbeque where her duties included serving food and washing dishes. (R. 32.) Claimant's past work experience also includes working as a nurse's assistant at Carolina Long-Term Care. (*Id.*)

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. Claimant complained of arthritis, uncontrolled diabetes, depression, and hearing voices. (R. 35, 40.) Claimant takes several medications, including Humulin R, Naproxen, and Seroquel. (R. 35.) Claimant testified she suffers from side effects from the medications that cause her to sleep most of the day, increase her appetite, and hinder her ability to concentrate. (*Id.*) She additionally reported that she gets angry for no apparent reason and, at times, does not want to be around people. (R. 36, 42.)

Claimant asserts that her diabetes is uncontrollable. (R. 36.) When her blood sugar is high, she experiences headaches, and when her blood sugar is low, she becomes nervous and jittery. (*Id.*) Claimant experiences these symptoms even when taking her insulin. (*Id.*) If Claimant does not take her insulin, her blood sugar remains high. (R. 37.) Claimant has neuropathy in her feet, and she cannot walk at times because she "can't feel [her] feet." (R. 38.) Claimant testified that her feet go numb about every day, and she has tingling in her hands. (*Id.*) Both numbness and tingling get worse with use. (*Id.*) Additionally, Claimant experiences pain in her knees associated with arthritis. (R. 39.) Claimant reported that the Naproxen she takes for her arthritis pain does not help "a whole lot." (R. 40.)

6

Claimant reports several mental impairments. Claimant takes Seroquel to treat her depression and to prevent her from hearing voices. (R. 40-41.) A side effect of the medication is that it causes her to sleep a lot during the day. (R. 41.) Claimant testified that the voice she hears in her head tells her "to do things that [she] knows is not right." (*Id.*) Claimant also explained that she has anger issues and does not like to be around people. (R. 42.)

Claimant reported that she has used crack and marijuana in the past, but has not used since 2009. (*Id.*) Claimant explained that she stopped her drug use because she was incarcerated for stealing. (R. 43.) Additionally, Claimant testified she suffers from migraine headaches that last for a few hours about twice a week. (R. 44.) She takes Excedrin Migraine to alleviate the symptoms. (*Id.*)

Claimant maintains that she can sit for fifteen to twenty minutes before her back and knees start hurting. (*Id.*) She reported that she could walk for five to ten minutes at a time before having to sit and rest for fifteen to twenty minutes. (R. 45.) Her average day consists mostly of sleeping. (R. 46.) She also watches television and helps her mother around the house. (*Id.*) Claimant testified that she did not have any hobbies and cooked very little. Claimant stated she goes to the grocery store once a month and receives food stamps. Additionally, Claimant has applied for Medicaid, but as of the time of the hearing, was not currently receiving it. (R. 47.)

Claimant further reported that she cannot work because of her uncontrollable diabetes, her arthritis pain, and because she cannot function with the medications she is currently taking. (*Id.*)

### III. Vocational Expert's Testimony

Julia Sawyer-Little testified as a VE at the administrative hearing. (R. 48-55.) The ALJ posed the following hypothetical question first:

7

> In this first hypothetical, I want you to consider an individual the same age, educational background, and work history as the claimant. That being [INAUDIBLE] the effects of the impairments noted in the file. Specifically assume this person could perform work in the light [INAUDIBLE]. This person can lift and carry 20 pounds occasionally, seven pound frequent [sic]. [INAUDIBLE] six hours in an eight-hour day, sit six hours in an eight-hour day. Person may need to alternate between sitting and standing [INAUDIBLE] 45 [INAUDIBLE]. The person should avoid exposure to [INAUDIBLE] based upon a history of depression and cognitive disorder. This person likely could understand and retain and follow simple instructions. [INAUDIBLE] repetitive tasks in two-hour increments. May have some difficulty relating to coworkers and supervisors [INAUDIBLE] unskilled work. Person might tend to have moderate difficulty tolerating [INAUDIBLE] day-to-day work activities. In this hypothetical person [sic] could perform any of the claimant's past relevant work?

(R. 52-53.) The VE responded that such a claimant could not return to Claimant's prior relevant work. (R. 53.) The ALJ asked if there was other work available that such an individual could perform. (*Id.*) The VE responded in the affirmative and noted that the following positions would accommodate the requested restrictions: photocopy machine operator (DOT 207.685-014), office helper (DOT 239.567-010), and marker (DOT 209.587-034). (*Id.*) The VE concluded that all jobs existed in significant numbers in both the state and national economies. (*Id.*)

The ALJ then made some changes to the first hypothetical asking, "If this hypothetical person could not maintain concentration, persistence, and pace in [INAUDIBLE] would that eliminate the jobs?" (R. 54.) The VE answered, "Yes." (*Id.*) The ALJ followed up asking, "If in fact this person could not get along with coworkers and supervisors because of the anger management issue, [INAUDIBLE] perform this job?" (*Id.*) The VE responded, "That's correct." (*Id.*) The ALJ then inquired, "If because of the effects of medication and pain, the person would miss one to three days of work per months [sic], would that also eliminate the jobs?" (*Id.*) The VE answered that it would. (*Id.*)

8

The ALJ then asked a second hypothetical:

> Hypothetical number two is the same as hypothetical number one, and modified. Except we're going to remove the sedentary to [INAUDIBLE] this person could lift 30 to 10 pounds occasionally, five pounds frequently. Everything else about this hypothetical would be the same as the first [INAUDIBLE]. Would it be safe to assume that this person would not perform claimant's past relevant work for the same reasons as you first [INAUDIBLE]?

(*Id.*) The VE responded in the affirmative and listed the following jobs that would be available to such a claimant: operator (DOT 237.367-014), food checker (DOT 211.482-014), and sorter (DOT 209.687-022). (R. 55.)

The ALJ presented the VE with a final hypothetical stating: "Hypothetical number three, I wish to fully credit the testimony of Ms. Hancock [INAUDIBLE] She testified that she would be unable to [INAUDIBLE] her past relevant work?" (R. 55.) The VE responded in the negative, and further testified that there would be no jobs in the regional or national economy that Claimant could perform. (*Id.*)

## **DISCUSSION**

The purpose of a vocational expert's testimony is to assist the Commissioner in determining whether there is other work available in the economy that a claimant can perform. Such an opinion is relevant and helpful only if it is "based upon a consideration of all other evidence in the record" and is "in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1998). The Commissioner may not rely upon a vocational expert's opinion where the hypothetical question posed does not "fit the facts" of the case. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979). And, where vital testimony of a vocational expert is missing or inaudible, the court conducting judicial review cannot find that the ALJ's decision is supported by substantial

9

evidence.  *See Russell v. Sullivan*, 914 F.2d 1492 (4th Cir. 1990) (Table) (holding that substantial evidence does not exist when critical testimony is inaudible).

As illustrated above, there are a number of inaudible portions in the hypotheticals the ALJ presented to the VE.  Due to the inaudible portions and varying evidence pertaining to weight limitations, the court is unable to understand fully the exchange between the ALJ and the VE. Furthermore, the audible portions of the ALJ's questioning of the VE do not appear consistent with the ALJ's RFC finding.  In his assessment of Claimant's RFC, the ALJ found that Claimant is limited to occasionally lifting and carrying twenty-five pounds and frequently carrying ten pounds. (R. 16.)  Yet, the first hypothetical posed by the ALJ asks the VE to consider a claimant that is limited to occasionally lifting and carrying twenty pounds and frequently lifting or carrying seven pounds.  (R. 52.)  The transcript reflects that the second hypothetical asked the VE to consider a claimant that could lift and carry a range of "30 to 10 pounds occasionally" and five pounds frequently.  (R. 54.)  No weight limitation is apparent from the third hypothetical due to the inaudible portions.  (R. 55.)

Moreover, it is not clear from the transcript in this case what restrictions or limitations were included in the ALJ's hypotheticals.  As a consequence, the court is not able to determine whether the hypotheticals posed to the VE are supported by the medical evidence.  Nor is the court able to discern whether the hypotheticals included all of Claimant's other limitations as set forth in the ALJ's RFC findings.  For example, the ALJ stated in his first hypothetical that the "[p]erson may need to alternate between sitting and standing [inaudible] 45 [inaudible]."  (R. 53.)  Based upon the inaudible portion of this hypothetical, the court is unable to say that the hypothetical is consistent with the ALJ's RFC restriction that Claimant be allowed to alternate sitting and standing at will.

10

Due to the incomplete nature of the hearing transcript in this case, the record is devoid of substantial evidence to support the ALJ's finding at step 5 that other jobs exist in the national economy that Claimant can perform. Therefore, the case should be remanded to the Commissioner for further consideration.

## CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Claimant's Motion for Judgment on the Pleadings [DE #23] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #25] be DENIED and the case be REMANDED to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 4th day of April 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge